UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| HEARTLAND MEMORIAL HOSPITAL LLC, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:10-CV-396 JD |
| VIJAY K GUPTA MD, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

On September 20, 2010, Plaintiff, Heartland Memorial Hospital, LLC ("Heartland"), by and through Trustee, David Abrams ("Trustee"), filed an appeal from the dismissal of an adversary proceeding for failure to prosecute in the United States Bankruptcy Court. *See* DE 1. On October 7, 2010, the Trustee filed a opening brief. *See* DE 5. On October 21, 2010, Defendant Accelerated Health Systems filed a response. *See* DE 6. On October 22, 2010, Defendants Harold E. Collins, Collins & Collins, Cheng H. Lin, Theodore Christou, Phillip Guastella, Brian French, Steven French, George Sreckovic, and James Gianfrancisco filed a response. *See* DE 9; DE 11. On the same day, Defendants Laura Smitley and Ray Halum filed a response. *See* DE 10. Also, on October 22, 2010, Defendant Vijay K Gupta filed a response. *See* DE 12. On November 4, 2010, the Trustee filed a reply. *See* DE 16.

**I. Procedural History**

The following procedural history of this case is taken from the parties' briefs and the documents filed as part of the Trustee's appeal. On May 16, 2007, the adversary proceeding was filed in the United States Bankruptcy Court for the Northern District of Indiana by the attorneys

1

representing Heartland in a related Chapter 11 case. *See* DE 2-1; 2-128 at 12; DE 5 at 6. The adversary proceeding implicated fifty-four defendants and sought a large monetary recovery, on account of allegedly fraudulent transfers. *See* DE 2-1.

A year-and-a-half later, on November 19, 2008, the Bankruptcy Court confirmed a plan for liquidating and reorganizing Heartland in the Chapter 11 case. *See* DE 2-124; DE 2-126; DE 2-127; DE 5 at 7. Contemporaneously, the Bankruptcy Court also approved an accompanying disclosure statement. *See* DE 2-123; DE 2-125; DE 5 at 7. Both the plan and the disclosure statement explained that this adversary proceeding would be transferred to a liquidating trust and that the Trustee would, thereafter, assume litigation control over the adversary proceeding. *See* DE 2-123 at 38; DE 2-124 at 8; DE 5 at 7-8. A little over a month later, on December 24, 2008, the Trustee's counsel entered an appearance in this adversary proceeding. *See* DE 2-84; DE 2-85; DE 2-128 at 28. Then, for fourteen months, the adversary proceeding lay dormant. *See* DE 2-128 at 28-29.

On February 18, 2010, noting the lack of activity, the Bankruptcy Court issued an order to show cause why the adversary proceeding should not be dismissed for failure to prosecute, citing N.D. Ind. L.B.R. B-7041-1. *See* DE 2-128 at 29. On March 12, 2010, nearly three years after the adversary proceeding was originally filed, the Trustee responded to the order to show cause. *See* DE 2-95; DE 2-128 at 29. Therein, the Trustee provided the following explanation for his inaction.

> 8. Upon confirmation, the Plan allocated certain funds to pay the initial legal fees and costs associated with the prosecution of both the then existing lawsuits, such as this adversary proceeding, as well as the ligation which the Liquidating Trustee intended to bring after confirmation. While these initial funds were critical, they are insufficient to meet all of Liquidating Trustee's litigation needs. The Plan contemplated that a significant portion of the legal fees and costs would be paid from

> the projected recoveries from the various legal proceedings.
>
> 9. Unfortunately, the recoveries from these other matters have not been as significant or as timely as the undersigned originally believed. The available financial resources have been used by the Liquidating Trustee to commence the legal proceedings, undertake the necessary steps to protect the Debtor's existing financial records, and locate records in the possession of other parties.
>
> 10. The Liquidating Trustee has been spending both time and money on those maters that would allow the Trustee to raise monies quickly. As a result, the Liquidating Trustee, and his counsel, have not advanced this adversary proceeding forward as quickly as they had hoped.
>
> 11. However, the Liquidating Trustee is now in a better position to advance this adversary proceeding.

*See* DE 2-95 at 2-3. The Trustee then indicated that he would soon file motions for default against the six defendants who had failed to answer and that he would serve written discovery requests on the remaining defendants "as soon as possible". *See* DE 2-95 at 2-3.

On May 20, 2010, the Bankruptcy Court issued an order dismissing the adversary proceeding for failure to prosecute, pursuant to Fed. R. Civ. P. 41 and N.D. Ind. L.B.R. B-7041-1. *See* DE 2-108; DE 2-128 at 30. Noting the Trustee's explanations and the applicable law for dismissal under Rule 41, the Bankruptcy Court held, in relevant part, as follows,

> The court finds a clear record of delay. Once the court granted the plaintiff's request in December 2007 for a continuance of all the deadlines, conferences and hearings scheduled in the case, activity in this case almost completely halted. Although Answers were filed, no discovery was initiated and no progress was demonstrated by the plaintiff. The court finds that this case exhibits a long-term pattern of inactivity. . . .
>
> In short, this case deliberately was not advanced because the Liquidating Trustee thought he could raise more funds quickly in more lucrative cases. This is clearly an admission that, by prioritizing other cases, this adversary case remained dormant. The decision not to act in this case was intentional. . . .
>
> This decision left the defendants, medical professionals, vulnerable. . . . The court notes that its continuance of the plaintiff's deadlines in this case, granted on

> December 11, 2007, was never meant to be an open-ended reason to stop prosecution of the case. . . .
>
> In this case, the court concludes that there is good cause to dismiss this case because of the excessive, intentional delay in prosecution, the prejudice to the 54 defendants, and the lack of any demonstration of potential merit to the plaintiff's claim.

*See* DE 2-108 at 4-6.

On June 3, 2010, the Trustee filed a motion to reconsider the Bankruptcy Court's dismissal order, pursuant to Fed. R. Civ. P. 59(e). *See* DE 2-109; DE 2-128 at 30. Therein, the Trustee argued that dismissal of the adversary proceeding was a disproportionate sanction in relation to the Trustee's inaction. *See* DE 2-109 at 6. Further, the Trustee argued that the Court's warning was rendered meaningless on account of the Court's failure to consider the Trustee's subsequent efforts to begin discovery shortly after the show cause order was issued. *See* DE 2-109 at 5.

On July 22, 2010, the Bankruptcy Court issued an order denying the motion for reconsideration. *See* DE 2-116; DE 2-128 at 31. In regards to the Trustee's former argument, the Bankruptcy Court pointed out the Trustee's failure to present new facts or point out errors of law that would warrant reconsideration of the Bankruptcy Court's decision to dismiss. *See* DE 2-116 at 3-4 (noting the standard for reconsideration under Rule 59(e)). In regards to the Trustee's latter argument, the Bankruptcy Court noted "[the Trustee's issuance of written discovery requests and filing of motions for default] may have been attempts to cure the inaction and to move the case forward, but they were not explanations of the plaintiff's failure to prosecute." *See* DE 2-116 at 4. Responding to both arguments, the Bankruptcy Court concluded, as follows:

> Although the Trustee tries to disassociate himself from the delays of plaintiff's

4

> previous counsel, he does not deny the clear record of his own (or his counsel's) delay in prosecuting this adversary proceeding and cannot deny the earlier delays before he was appointed Trustee. He claims he met all the court's deadlines, but is unwilling to acknowledge his failure to comply with the deadline set forth in this court's Local Bankruptcy Rule B-7041-1.

*See* DE 2-116 at 4-5. Thereafter, the Trustee appealed both of the Bankruptcy Court orders to this Court.[1]

## II. Appeal from Bankruptcy Court Dismissal

### A. Applicable Law

District courts possess the inherent authority to dismiss a case *sua sponte* for failure to prosecute. *Williams v. Chi. Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998); *Bluestein & Co. v. Hoffman*, 68 F.3d 1022, 1025 (7th Cir. 1994); *Dickerson v. Bd. of Educ. of Ford Heights Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994); *GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir. 1993); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (1962). Bankruptcy courts possess the same authority under Bankruptcy Rule 7041, which incorporates Fed. R. Civ. P. 41 into adversary bankruptcy proceedings. Fed. R. Bankr. 7041; *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1060 (7th Cir. 1989). Courts have the power to invoke this sanction in order "to achieve the orderly and expeditious disposition of cases" or to deter litigants from engaging in dilatory behavior. *Williams*, 155 F.3d at 857; *Washington v. Walker*, 734 F.2d 1237, 1239 (7th Cir. 1984); *Link*, 370 U.S. at 629-31.

---

[1] The Court notes that, although the Trustee states that he is appealing both orders, the Trustee does not substantively articulate a legal or procedural error within the Bankruptcy Court's order denying reconsideration. As such, this Court considers the Trustee to be primarily challenging the Bankruptcy Court's dismissal order. Further, the Court considers the Trustee to be only appealing the reconsideration order to the extent that the reconsideration order affirms the conclusions made in the prior dismissal order and to the extent that the reconsideration order represents a final, appealable order of the Bankruptcy Court. Therefore, because the Trustee does not raise a specific challenge to the reconsideration order, this Court will not substantively analyze whether the Bankruptcy Court properly applied Rule 59(e) in denying reconsideration. Rather, the Court will exclusively focus on whether the Bankruptcy Court's dismissal order was free of legal error and did not amount to an abuse of discretion.

In exercising this authority, however, courts must "perpetually balance the competing interests of keeping a manageable docket against deciding cases on their merits." *Bluestein & Co.*, 68 F.3d at 1025; *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199. Indeed, because a dismissal with prejudice is a harsh sanction, courts are cautioned that it should only be employed in extreme situations, when there is a clear record of delay or contumacious conduct or when other less drastic sanctions have proven unavailing. *Williams*, 155 F.3d at 857; *Bluestein & Co.*, 68 F.3d at 1025; *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199; *Pyramid Energy, Ltd.*, 869 F.2d at 1061.

Nevertheless, appellate review of a dismissal under Fed. R. Civ. P. 41 is highly deferential; and this Court's review is, necessarily, limited to the narrow, abuse-of-discretion standard. *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 907 (7th Cir. 2003); *Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 872 (7th Cir. 2001); *Williams*, 155 F.3d at 857; *Dickerson*, 32 F.3d at 1116; *Bluestein & Co.*, 68 F.3d at 1025; *Ball v. City of Chi.*, 2 F.3d 752, 760 (7th Cir. 1993); *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199; *Lowe v. City of E. Chi., Ind.*, 897 F.2d 272, 274 (7th Cir. 1990); *Pyramid Energy, Ltd.*, 869 F.2d at 1061; *Washington*, 734 F.2d at 1240.

> Given the variability of circumstances from case to case, the fact that the district judge will have acquired a better feel than we appellate judges can for the attitudes of the litigants and lawyers in the district court, the judge's greater familiarity with his own calendar, and the inherently judgmental character of managerial decision-making, appellate review of a decision to dismiss a suit for failure to prosecute should be deferential.

*Ball*, 2 F.3d at 755.

Applying the abuse of discretion standard, a judge is presumed to have acted reasonably, and reversal is warranted only if it is plain that dismissal was a mistake or that the judge did not consider factors essential to the exercise of a sound discretion. *Moffitt*, 236 F.3d at 873; *Ball*, 2

6

F.3d at 755. So long as the dismissal was not tainted by a legal error or the failure to consider an essential factor, the Court will conclude that reversal is warranted only when the decision to dismiss "strikes [the Court] as fundamentally wrong" or it is clear that "no reasonable person could concur in the trial court's [decision to dismiss]". *Aura Lamp & Lighting, Inc.*, 325 F.3d at 907-08; *Moffitt*, 236 F.3d at 873; *Williams*, 155 F.3d at 857 ("[t]he abuse of discretion standard means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge"); *Bluestein & Co.*, 68 F.3d at 1025; *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199; *Pyramid Energy, Ltd.*, 869 F.2d at 1061.

**B. Analysis**

The Trustee's appeal of the Bankruptcy Court's dismissal consists of three challenges. First, the Trustee asserts that the Bankruptcy Court did not offer sufficient warning before dismissing the case for failure to prosecute. Second, the Trustee contends that the Bankruptcy Court did not allow the Trustee sufficient opportunity to "cure" the admitted period of extended inactivity. Third, the Trustee argues that the Bankruptcy Court did not properly apply the discretionary factors for dismissal that are articulated in *Ball*. As described in detail below, the Court is not persuaded by the Trustee's arguments and concludes that the Bankruptcy Court's dismissal was free of legal error and did not amount to an abuse of discretion.

***1. The Bankruptcy Court provided sufficient warning prior to dismissal.***

To the extent that the Trustee argues that the Bankruptcy Court failed to offer any warning prior to dismissal, the argument is unavailing for two reasons. First, providing an explicit warning in advance of dismissal, though advisable in most circumstances, is not required by a judge in every case. *Link*, 370 U.S. at 633. *See Moffitt*, 184 F.R.D. at 303 (noting that

7

warnings are not necessary when it is clear that counsel would have expected his action or inaction would be met with dismissal). *See also Williams*, 155 F.3d at 857 n.4; *Fischer v. Cingular Wireless*, 446 F.3d 663, 665 (7th Cir. 2006) (recognizing the variability between cases and a judge's need to appropriately sanction dilatory tactics and, consequently, tempering the holding in *Ball*, 2 F.3d at 755, that a judge "must" provide a warning to plaintiff's counsel before dismissing a case). Second, even though the Bankruptcy Court was not required to provide an explicit warning prior to dismissal, the Bankruptcy Court did offer sufficient warning to the Trustee in the form of a show cause order. *See e.g. Swarm v. Siemens Bus. Commc'n Sys.*, 9 Fed. Appx. 512, 515 (7th Cir. 2001) (unpublished opinion) (noting that a plaintiff received "due warning" that failure to advance her case would be fatal via a show cause order).

### *2. The Bankruptcy Court was not required to allow the Trustee an opportunity to "cure" his prior failure to advance the adversary proceeding.*

The Trustee's related argument, that the Bankruptcy Court's warning was rendered meaningless by the Bankruptcy Court's failure to consider the Trustee's subsequent efforts to cure his prior, fourteen-month delay, is similarly unpersuasive. Notably, the Trustee cites no relevant case law wherein a court was required to first allow a plaintiff an opportunity to correct its prior delay before dismissing a case for failure to prosecute. Indeed, the Seventh Circuit has held that the opposite is true, noting that such a rule would unreasonably reward litigants who ignore the court's schedule and would prevent courts from effectively managing their dockets. *See Fischer v. Cingular Wireless*, 446 F.3d 663, 665 (7th Cir. 2006).

> Were district courts required to warn litigants before dismissing a case, we would in effect be granting each litigant one opportunity to disregard the court's schedule without fear of penalty regardless of the harm done to other litigants. Such a rule would impermissibly burden the district courts in their efforts to manage their dockets.

8

*Id.*

Further, a review of the Bankruptcy Court's orders reveals that the Bankruptcy Court did not disregard the Trustee's subsequent actions, as the Trustee suggests, but, rather, considered the Trustee's belated efforts and found them to be too-little, too-late. In the Trustee's response to the order to show cause, the Trustee admitted that he had not advanced this particular adversary proceeding, due to his prioritizing other adversary proceedings ahead of it and due to the slower-than-anticipated acquisition of litigation funds from those other cases. *See* DE 2-95 at 2-3. Noting the extensive period of inaction in the immediate case and the complete lack of discovery in nearly three years, the Bankruptcy Court considered the Trustee's explanation to be an admission of "deliberate[]" and "intentional" inaction. *See* DE 2-108 at 4-6. In addition, the Bankruptcy Court concluded that the Trustee's purposeful delay unduly prejudiced the fifty-four Defendants, who were confronted with million-dollar fraud charges and were forced to incur vast sums of attorneys fees while the Trustee chose not to act. *Id.* Drawing a clear distinction between the Trustee's prior inaction and the Trustee's subsequent attempts to begin discovery, the Bankruptcy Court stated in the reconsideration order, "[the Trustee's issuance of written discovery requests and filing of motions for default] may have been attempts to cure the inaction and to move the case forward, but they were not explanations of the plaintiff's failure to prosecute." *See* DE 2-116 at 4.

Reviewing this thorough discussion by the Bankruptcy Court, this Court does not agree that the Bankruptcy Court ignored or failed to give credence to the Trustee's after-the-fact attempts to cure his prior inaction. Rather, the Bankruptcy Court's discussion reveals that the Bankruptcy Court considered the Trustee's subsequent actions but found them to be insufficient

9

to warrant against dismissal, particularly in light of the Trustee's candid admission of prior inaction and the resulting prejudice to the Defendants. In light of the holding in *Fischer*, this Court does not consider the Bankruptcy Court's decision to amount to an abuse of discretion. *See Fischer*, 446 F.3d at 665 (concluding that courts do not have to tolerate a litigant's inactivity or delay by giving them a warning and an opportunity to respond before issuing a dismissal).

Additionally, this Court does not conclude that the Bankruptcy Court's dismissal decision amounted to an error of law. Instead, relevant case law demonstrates that a judge's decision to dismiss a case for want of prosecution may be reasonably grounded when a plaintiff fails to move his case forward. *See e.g. Cohen*, 32 Fed.Appx. at 759-60 (unpublished case) (affirming dismissal wherein the plaintiffs took no action to advance their case for a year and half after initially filing their complaint, considering such delay to amount to "a long-term pattern of inactivity"); *Moffitt*, 236 F.3d at 873 (upholding dismissal, even where there was no record of delay or contumacious behavior, where graduated sanctions were not employed, and where no express warning was provided beforehand, but where the plaintiff's attorney was unprepared to proceed on the date of trial); *Washington*, 734 F.2d at 1240 (concluding that dismissal for failure to prosecute was not an abuse of discretion wherein a plaintiff failed to move a case forward in five years).

> [F]ailure to prosecute under the rule does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by the regular machinery of the court. It is quite sufficient if he does nothing, knowing that until something is done there will be no trial.

*Washington*, 734 F.2d at 1238. Thus, although dismissal of the adversary proceeding was, indeed, a harsh sanction, the Bankruptcy Court was not without legal grounds for doing so, given the Trustee's intentional, fourteen-month period of inaction, which came on the heels of an

eighteen month period of additional inactivity by Heartland's prior attorneys.

### 3. The Bankruptcy Court was neither required to apply the discretionary factors for dismissal nor did it fail to do so.

Finally, the Trustee contends that the Bankruptcy Court failed to properly apply the discretionary factors for dismissal, as articulated in *Ball*, 2 F.3d at 760. To begin, however, the Court notes that the factors articulated in *Ball* and its progeny are not mandatory but are, rather, discretionary in nature. Indeed, taking into account the deference afforded to a judge's decision to dismiss for failure to prosecute, the *Ball* Court explained that "only loose and approximate guidelines" are provided to guide a judge's discretion. *Ball*, 2 F.3d at 755. *See also Washington*, 734 F.2d at 1240 (reminding reviewing courts that "no exact rule can be laid down to when dismissal for failure to prosecute is justified" and noting that each dismissal must be considered in light of the procedural history and status of the case at the time of the dismissal); *Pyramid Energy, Ltd.*, 869 F.2d at 1061 (same).

A few factors, which the Seventh Circuit has suggested should "ideally" guide a judge's decision to dismiss for failure to prosecute[2], include: the frequency and magnitude of the plaintiff's failure to comply with court deadlines; the effect of these failures on the court's schedule; the prejudice to other litigants; and the possible merits of the underlying action. *Aura*

---

[2] As further evidence that the *Ball* factors are discretionary rather than mandatory in nature, the Court notes several cases wherein consideration or satisfaction of a *Ball* factor was found to be not required prior to dismissal. For example, it is now well-established that a judge is not required, in all circumstances, to consider or impose graduated sanctions before dismissing a case for lack of prosecution. *See Aura Lamp & Lighting, Inc.*, 325 F.3d at 908; *Williams*, 155 F.3d at 858 n.5; *Bluestein & Co.*, 68 F.3d at 1026; *Dickerson*, 32 F.3d at 1116 ("[w]here the pattern of dilatory conduct is clear, dismissal need not be preceded by the imposition of less severe sanctions"); *Ball*, 2 F.3d at 756; *Pyramid Energy, Ltd.*, 869 F.2d at 1062 ("[a] trial court is entitled to say, under proper circumstances, that enough is enough, and less severe sanctions than dismissal need not be imposed where the record of dilatory conduct is clear"). Similarly, a judge is also not required, in every case, to make a finding of prejudice before issuing a dismissal. *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199; *Washington*, 734 F.2d at 1239 ("prejudice may be presumed from an unreasonable delay.").

11

*Lamp & Lighting, Inc.*, 325 F.3d at 908; *Cohen v. Hoyer*, 32 Fed.Appx. 755, 759 (7th Cir. 2002) (unpublished case); *Williams*, 155 F.3d at 857; *Ball*, 2 F.3d at 759-60.

Despite being discretionary, the dismissal order evidences that the Bankruptcy Court did, in fact, consider and discuss each of these factors. Specifically, after a thorough review of the procedural history, the Bankruptcy Court concluded that dismissal was warranted on account of the Trustee's "extensive, intentional delay in prosecution". *See* DE 2-108 at 4-6. The Court further explained that the Trustee's deliberate, fourteen-month period of inaction, compounded with prior delays, resulted in the case lying dormant on the Court's docket for nearly three-years and unduly prejudiced the fifty-four Defendants. *See* DE 2-108 at 4-6. Further, the Bankruptcy Court also held, albeit with very-little explanation, that dismissal was additionally warranted on account of the Trustee's failure to demonstrate "potential merit" to the adversary proceeding. *See* DE 2-108 at 6.

Given the discretionary nature of the *Ball* factors and the Bankruptcy Court's consideration of the same, it can not be said that the Bankruptcy Court committed an error of law in articulating the reasons for dismissal.

The Court also does not consider the Bankruptcy Court's decision to dismiss, as articulated under the *Ball* factors, to amount to an abuse of discretion. For instance, the Court is not persuaded by the Trustee's argument that the Bankruptcy Court should have considered imposing less severe sanctions before dismissing the case. The Seventh Circuit has rejected this argument on numerous occasions. *See e.g. Aura Lamp & Lighting, Inc.*, 325 F.3d at 908; *Williams*, 155 F.3d at 858 n.5; *Bluestein & Co.*, 68 F.3d at 1026; *Dickerson*, 32 F.3d at 1116 ("[w]here the pattern of dilatory conduct is clear, dismissal need not be preceded by the

imposition of less severe sanctions"); *Ball*, 2 F.3d at 756; *Pyramid Energy, Ltd.*, 869 F.2d at 1062 ("[a] trial court is entitled to say, under proper circumstances, that enough is enough, and less severe sanctions than dismissal need not be imposed where the record of dilatory conduct is clear"). Similarly, the Court is not persuaded by the Trustee's argument that dismissal was unwarranted because the Trustee did not miss any court deadlines or display other contumacious behavior. As explained above, the Seventh Circuit has held on numerous occasions that inaction, alone, is sufficient to justify dismissal.[3] *See e.g. Cohen*, 32 Fed.Appx. at 759-60 (unpublished case); *Moffitt*, 236 F.3d at 873; *Washington*, 734 F.2d at 1240. In addition, the Court is not persuaded by the Trustee's assertions that his inactivity did not negatively impact the Bankruptcy Court's docket and did not prejudice the Defendants. The Bankruptcy Court sufficiently supported and explained its conclusions regarding these factors, and this Court considers there to be sufficient evidence for a reasonable person to concur with the Bankruptcy Court's conclusions. *See Moffitt*, 236 F.3d at 873 (explaining that, in the absence of legal error, reversal of a dismissal for failure to prosecute is warranted only when "no reasonable person

---

[3] Likewise, the Trustee also contends that dismissal was inappropriate because there was, arguably, only "a single instance of non-compliance" in this case. In so arguing, the Trustee cites *Casteel v. Pieschek*, 3 F.3d 1050, 1055-56 (7th Cir. 1993), and *Lowe*, 897 F.2d at 274. However, as stated above, the 7th Circuit has held, on numerous occasions that inaction, alone, is sufficient to justify dismissal, regardless of the lack of contumacious behavior. *See e.g. Cohen*, 32 Fed.Appx. at 759-60 (unpublished case); *Moffitt*, 236 F.3d at 873; *Washington*, 734 F.2d at 1240.
 Further, the cases cited by the Trustee had markedly distinguishable procedural histories than the immediate case; and the cited cases had numerous, additional factors which tilted against dismissal for failure to prosecute, none of which are present in the immediate case. For instance, the dismissal in *Casteel* was reversed because the plaintiff, proceeding *pro se*, had responded quickly to the court's show cause order and had made attempts to keep his claim alive, thereafter; there was no prejudice to the defendants; and there had been no delay to the Court's docket. *See Casteel*, 3 F.3d at 1055-56. In contrast, the Bankruptcy Court found, in the immediate case, that the Trustee, represented by counsel, deliberately did not advance this case for fourteen months; that the delay was "excessive"and "long-term", and that the Defendants, medical professionals, had been prejudiced as a result. *See* DE 2-108 at 4-6. In *Lowe*, the 7th Circuit reversed a dismissal for want of prosecution because the Court considered it "unreasonable" to attribute contumacious behavior to a newly-*pro se* litigant, who was unable to quickly proceed to trial on account of the prior discovery delays and sudden withdrawal of his former counsel. *See Lowe*, 897 F.2d at 274-75. In the immediate case, the Trustee has been represented by counsel throughout the Trustee's involvement in the adversary proceeding; and the Trustee's counsel has admitted taking no action to advance this case.

13

could concur in the trial court's [decision to dismiss]"); *Williams*, 155 F.3d at 857 ("[t]he abuse of discretion standard means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge"); *Bluestein & Co.*, 68 F.3d at 1025; *GCIU Emp'r Ret. Fund*, 8 F.3d at 1199; *Pyramid Energy, Ltd.*, 869 F.2d at 1061.

Indeed, the only factor that the Trustee discusses somewhat persuasively is whether the Bankruptcy Court adequately explained why there was no demonstrated merit to the adversary proceeding. However, in making this argument, the Court notes that the Trustee does not dispute the Bankruptcy Court conclusion that he failed to articulate the merits of the adversary proceedings in his response to the Bankruptcy Court's show cause order. Rather, the Trustee argues that dismissal of the adversary proceeding is prejudicial to the creditors who stood to benefit from potential monetary recoveries from the adversary proceeding.

However, this Court considers any prejudice in this regard to be, at least partially, the fault of the Trustee and the fault of the attorneys who initiated the adversary proceeding. Both chose not to initiate discovery and let this case lay dormant for nearly three years until the Bankruptcy Court issued the order to show cause. Nevertheless, even if this one *Ball* factor were to tip in the Trustee's favor, it does not sufficiently establish that the balance should have absolutely tipped the scales against dismissal. Put differently, even considering the potential prejudice to the creditors who may be impacted by the Trustee's inaction and the Bankruptcy Court's resulting dismissal order, this Court does not consider the Bankruptcy Court's dismissal to be "fundamentally wrong". *See Moffitt*, 236 F.3d at 873 (explaining that, in the absence of legal error, a reviewing court will reverse a dismissal order only if it "strikes [the Court] as fundamentally wrong"); *Williams*, 155 F.3d at 857; *Bluestein & Co.*, 68 F.3d at 1025; *GCIU*

*Emp'r Ret. Fund*, 8 F.3d at 1199; *Pyramid Energy, Ltd.*, 869 F.2d at 1061.

### III. Conclusion

For the aforementioned reasons, this Court concludes that the Bankruptcy Court provided adequate warning, was not required to allow the Trustee an opportunity to cure his prior inaction before dismissal and that the application of the discretionary *Ball* factors neither amounted to an error of law nor an abuse of discretion. Accordingly, the Court now **DENIES** the Trustee's appeal from the Bankruptcy Court's dismissal of the adversary proceeding.

SO ORDERED.

ENTERED:   July 6, 2011

　　　　　　　　　　　　　　　　　　　　/s/ JON E. DEGUILIO
　　　　　　　　　　　　　　　　　　Judge
　　　　　　　　　　　　　　　　　　United States District Court